ROBERT L. AND MARION L. SPEERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Speers v. Commissioner
Docket No. 4561-92
United States Tax Court
T.C. Memo 1994-157; 1994 Tax Ct. Memo LEXIS 158; 67 T.C.M. (CCH) 2653; April 13, 1994, Filed *158 For petitioners: Frank T. Kanemitsu and Richard L. Frunzi. For respondent: Jonathan J. Ono. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
1987
$ 12,501
$   587
$ 776
n1
1988
3,290
- 165
n1
1989
2,706
2,184
- -
Additions to Tax
Sec.
Sec.
Sec.
Year
6654
6661
6662(a)
1987
$   9
$ 3,125
- 1988
183
-  - 1989
300
- $ 541
Amounts to be determined.
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioners are entitled to a moving expense deduction for 1987; (2) whether petitioners are entitled to a deduction for partnership start-up expenses; (3) whether petitioners' S corporation income should be increased because a rent deduction reported by the S corporation is disallowed under section 280A and because the S corporation *159 made payments to, and on behalf of, petitioners; and (4) whether petitioners are liable for additions to tax under sections 6651(a)(1), 6653(a), 6654, 6661, and 6662(a). FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time of the filing of the petition, petitioners resided in Honolulu, Hawaii. Robert L. Speers (Dr. Speers) is a specialist in brain injury rehabilitation and has a doctoral degree that allows him to practice in Hawaii and several other states. Marion L. Speers (Mrs. Speers) is a licensed physical therapist. Petitioners work with, and attempt to rehabilitate, patients who have suffered brain injuries in automobile accidents or other catastrophic events. Petitioners desired to establish a treatment center that would offer psychological and physical therapy services for brain trauma victims. Petitioners sought to provide rehabilitative training in a residential setting so as to help patients learn to accomplish everyday tasks such as brushing their teeth, making breakfast, and taking out the garbage. In September 1986, petitioners moved from Georgia to Hawaii because they *160 thought that Hawaii might be a good location to develop such a facility. In conjunction with this move, petitioners placed household goods in storage. These stored household goods were subsequently shipped to petitioners in Hawaii in October 1987, after petitioners determined that Hawaii was a good location for their facility. On their 1987 income tax return, petitioners claimed a $ 21,548 moving expense deduction, $ 7,388 of which was for storage expenses incurred in storing the household goods in Georgia. In 1987, petitioners formed, and were the only partners in, a partnership known as Rainbow Rehabilitation Services (the partnership). Petitioners formed the partnership as part of their effort to establish the treatment center. The partnership did not report any gross receipts or sales on its 1987 partnership return, but it reported expenses totaling $ 36,082. Petitioners claimed the $ 36,082 loss on Schedule E of their 1987 income tax return. Petitioners were subsequently advised to incorporate Rainbow Rehabilitation Services in order to obtain the benefits of limited liability. On January 1, 1988, petitioners formed Rainbow Rehabilitation Services, Inc. (the S corporation), *161 and elected S corporation status. Petitioners were the sole shareholders and the only employees of the S corporation. The treatment center opened for business in January 1988 and was located in a home leased in a residential area on Elelupe Road in Honolulu (Elelupe property). The lease was entered into in October 1987, and the named tenants in the lease were "Robert L. and Marion L. Speers, dba The Brain Injury Recovery Center of Hawaii". However, the S corporation paid the monthly rent payments to the landlord. The monthly rent on the Elelupe property was $ 2,500 for the period October 1987 through September 1988 and was subsequently raised to $ 2,625 and $ 2,750 in October 1988 and October 1989, respectively. During the years in issue, petitioners resided at the Elelupe property and made payments to the S corporation in exchange for a bedroom that they occupied in the house. The S corporation reported rent expense of $ 24,500 and $ 22,996 on its respective 1988 and 1989 income tax returns. These amounts were calculated as the total rent less the payments made by petitioners to the S corporation. Although petitioners wanted to run an overnight facility, they were unable *162 to obtain a permit allowing patients to stay overnight at the Elelupe property. Thus, patients were treated only on a daily or hourly basis. The Elelupe property contained a 3,400-square-foot split-level home that consisted of three bedrooms, a living room, a family room, and a kitchen/dining room. One bedroom, on the ground floor with the measurements of approximately 27 by 27 feet, was divided into two sections; one half was used as an office for Dr. Speers, and the other half was used as Mrs. Speers' physical therapy office. The other bedroom on the ground floor was set up as a regular bedroom. The entire downstairs area was used in the rehabilitative process. The third bedroom, located upstairs, was used by petitioners as their "personal suite". In order to finance the rehabilitation activity, petitioners transferred funds to the S corporation. There was no documentation providing evidence of any indebtedness. Petitioners received direct payments from the S corporation in the form of checks issued, as well as cash withdrawals from the bank account of the S corporation, totaling $ 39,138 in 1988 and $ 40,350 in 1989. The S corporation made payments totaling $ 5,093.48 *163 in 1988 and $ 752 in 1989 to third parties on behalf of petitioners that were not ordinary and necessary expenses of the business activity of the S corporation. During 1988 and 1989, petitioners did not report compensation for the services they performed for the S corporation. Petitioners purported to take money out of the S corporation as repayments on "loans" only as needed. The S corporation did not report salaries and wages on its 1988 and 1989 income tax returns. In the notice of deficiency, respondent determined that petitioners were not entitled to claim the $ 7,388 that they paid for storing household goods as a moving expense deduction in 1987; that petitioners' 1987 distributive losses from the partnership totaling $ 36,082 were required to be amortized over a 60-month period, instead of deducted in 1987; that petitioners' distributive share of the S corporation income should be recharacterized as compensation for 1988 and 1989 in the respective aggregate amounts of $ 62,352 and $ 57,404, which includes an adjustment to reflect rent that was paid by the S corporation for petitioners' residence; and that petitioners were liable for additions to tax under sections 6651(a)(1), *164 6653(a), 6654, 6661, and 6662(a). The adjustments relating to the recharacterization of S corporation income are correlative adjustments that stem from determinations made in a separate examination of petitioners' S corporation returns. OPINION Moving Expenses
Section 217(a) provides that a deduction is allowed for "moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self- employed individual at a new principal place of work." Section 217(b)(1)(A) provides that the term "moving expenses" includes the reasonable expenses of "moving household goods and personal effects from the former residence to the new residence". The expenses of "moving household goods and personal effects" include in-transit storage expenses for such goods. Sec. 1.217-2(b)(3), Income Tax Regs. Storage expenses are "in-transit" if they are "incurred within any consecutive 30-day period after the day such goods and effects are moved from the taxpayer's former residence and prior to delivery at the taxpayer's new residence." Id.
Petitioners' household goods were placed in storage in September 1986 and were not *165 shipped to Hawaii until October 1987. Petitioners' 1987 storage expenses are not "in-transit" storage expenses because the storage period was in excess of the allowable 30-day period. Expenses incurred for storage of household goods for periods in excess of 30 days are permitted in the case of "foreign moves". Sec. 1.217-2(h)(1), Income Tax Regs. The "foreign move" provision applies when the taxpayer commences work at a new principal place of work located outside the United States and its possessions. Sec. 217(h)(3) and (4). At trial, Dr. Speers testified that petitioners' 1987 $ 7,388 deduction for storage expenses was based on his understanding of an Internal Revenue Service publication that discussed an example of a taxpayer's moving from Atlanta, Georgia, to London, England. However, petitioners' move from Georgia to Hawaii is not a "foreign move", and thus section 217(h)(2) is inapplicable here. Petitioners do not address the moving expense deduction in their brief and thus have abandoned it. Petitioners are not entitled to a $ 7,388 deduction for storage expenses in 1987. Partnership Start-Up Expenses
Respondent contends that the business activity that the partnership *166 was formed to undertake, the operation of a treatment center, did not commence until 1988 and, as a result, that petitioners cannot deduct their distributive shares of the 1987 partnership loss because that loss consists of nondeductible start-up expenses. See sec. 195. Because the intended business activity of the partnership was assumed by the S corporation in January 1988, respondent claims that the nondeductible start-up expenses should be amortized over 60 months pursuant to section 709(b), commencing in January 1988. Petitioners do not contest respondent's determination that the 1987 partnership loss consists of start-up expenses that are not deductible in 1987. However, petitioners contend that these expenses are fully deductible under section 709(b)(1) in 1988, the year the partnership disbanded. Section 709(b)(1) provides: Amounts paid or incurred to organize a partnership may * * * be treated as deferred expenses. Such deferred expenses shall be allowed as a deduction ratably over such period of not less than 60 months * * * or if the partnership is liquidated before the end of such 60-month period, such deferred expenses (to the extent not deducted under this *167 section) may be deducted to the extent provided in section 165. [Emphasis added.]
Section 165 provides that a deduction is allowed for any loss sustained during the taxable year that is not compensated by insurance or otherwise. Petitioners argue that, "Under the terms of Code Section 165, the expenses incurred by the Petitioner would be immediately deductible in 1988." In the context of this case, their argument has no merit. Because the intended business activity of the partnership was assumed by the S corporation in 1988, petitioners' situation with respect to their business activity in 1988 was no different than it was in 1987, except that the form of petitioners' business had changed from a partnership to an S corporation. Because the business activity was continued, petitioners did not lose any of the value connected with the amortizable start-up expenses. See Hearst Corp. v. United States, 13 Cl. Ct. 178, 184, 191 (1987). Petitioners' change in business entity form does not entitle them to a current section 165 deduction for otherwise amortizable start-up expenses. Petitioners also claim that the S corporation stock that they owned *168 was section 1244 stock and, as such, that they should be permitted to deduct losses. Because petitioners have not incurred a loss on the S corporation stock, section 1244 has no relevance to the issue of the deductibility of the start-up expenses in this case. Increase in S Corporation Income
As respondent concedes, for purposes of this case, the determination of whether petitioners' income from the S corporation is characterized as distributive share income or wage income is irrelevant. Respondent's increase in wage income is, however, larger than respondent's reduction in Schedule E income. The majority of this net increase is attributable to a rent adjustment. Respondent contends that the rent deduction reported by the S corporation included the rent expense of petitioners' personal residence at the Elelupe property and that this deduction is disallowed under section 280A. Section 280A(a) provides that, generally, no deduction is allowed to an individual or an S corporation with respect to the use of a dwelling unit that is used by the taxpayer during the taxable year as a residence. Section 280A(c) carves out certain exceptions to this general rule of nondeductibility. *169 Section 280A(c)(1) provides in part: (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. [Emphasis added.]
Petitioners used the upstairs bedroom solely for personal purposes. Thus, only the downstairs portion of the Elelupe property arguably is eligible for the section 280A(c)(1) exception. Respondent concedes that petitioners used the ground floor bedroom office exclusively for business purposes. Therefore, the portion of rent that is allocable to that 27- by 27-foot room is deductible. With respect to the remainder of the Elelupe property, respondent contends that petitioners did not establish the exclusive use requirement of section 280A(c)(1). *170 Petitioners admit that they used a portion of the Elelupe property for personal uses but maintain that such personal use was de minimis and thus should not preclude deductibility. The area in dispute here is the majority of the downstairs portion of a home, including a kitchen and family room. Petitioners resided in the house, and we are not persuaded that their personal use can be ignored. The exclusive use requirement of section 280A(c)(1) is an "all-or-nothing standard". Hamacher v. Commissioner, 94 T.C. 348, 357 (1990). Combined personal and business use precludes deductibility of the cost of the residence. See generally Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1557 (1987). Although we are satisfied that the downstairs portion of the Elelupe property was used by petitioners on a regular basis as the principal place of business, petitioners have failed to establish that these areas were used exclusively for business purposes. As a result, except for the rent attributable to the 27- by 27-foot bedroom, section 280A precludes a deduction for the Elelupe property rent. Thus, petitioners' S corporation *171 income must be increased to reflect the section 280A disallowance of a portion of the Elelupe property rent. Petitioners' S corporation income must also be increased to the extent that petitioners did not report, as part of their S corporation distributive share income, the payments of $ 39,138 in 1988 and $ 40,350 in 1989 that were made to them by the S corporation and the payments of $ 5,093.48 and $ 752 made by the S corporation to third parties on behalf of petitioners in 1988 and 1989, respectively. Petitioners have not demonstrated that any portion of these payments constitutes loan repayments. See A.R. Lantz Co. v. United States, 424 F.2d 1330, 1333 (9th Cir. 1970). Petitioners contend that respondent's adjustments are effectively mandatory distributions that are contrary to Hawaii law and prevent the S corporation from retaining assets in the corporation in order to advance growth opportunities. Petitioners argue that respondent's adjustments violate principles stated in Bardahl Manufacturing Corp. v. Commissioner, T.C. Memo. 1965-200, which related to a section 531 accumulated earnings tax imposed on a corporation *172 that had allowed its earnings and profits to accumulate beyond the reasonable needs of its business. Petitioners apparently do not understand the consequence of their subchapter S election. Section 1366(c) requires petitioners to include their pro rata share of S corporation income in their gross income. Respondent has not required the S corporation to make a distribution. Moreover, payments actually made from the corporation to or on behalf of petitioners during 1988 and 1989 would be taxed as dividends to which section 301(c) would apply if the corporation were not a subchapter S corporation. Additions to Tax
Respondent determined that petitioners were liable for additions to tax under section 6653(a) for 1987 and 1988 and under section 6662(a) for 1989 for negligence or intentional disregard of the rules or regulations. Additions to tax under section 6651(a)(1) for failure to file timely a tax return were determined for 1987 and 1989. Additions to tax under section 6654 were determined for failing to pay sufficient amounts of estimated taxes for all of the years in issue. Finally, it was determined that petitioners were liable for an addition to tax under section *173 6661 for 1987 due to a substantial understatement of tax. Petitioners have the burden of proving that these additions to tax should not be imposed against them. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioners have presented no argument on this issue either at trial or on brief and, thus, petitioners appear to have conceded this issue. Their claims of deductions that are contrary to the express terms of the Internal Revenue Code and Treasury regulations justify the additions to tax based on negligence or intentional disregard of rules or regulations. A fortiori, they have no excuse under sections 6654 or 6661, which require them to satisfy particular exceptions. Respondent's determination with respect to the additions to tax will be sustained. Decision will be entered under Rule 155.